## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LYNN SANSOUCIE | : | |
| | : | |
| Plaintiff, | : | C.A. No.  04-861-JJF |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| REPRODUCTIVE ASSOCIATES | : | |
| OF DELAWARE, P.A., | : | |
| | : | |
| Defendant. | | |

---

## PLAINTIFF'S ANSWERING BRIEF TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

Jeffrey K. Martin, Esquire (DE #2407)
Timothy J. Wilson, Esquire (DE #4323)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680

Attorney for Plaintiff

Dated: March 14, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………… ii

NATURE AND STAGE OF THE PROCEEDING …………………………………… 1

SUMMARY OF ARGUMENT ……………………………………………………… 2

STATEMENT OF MATERIAL FACTS …………………………………………... 3

ARGUMENT ……………………………………………………………………… 7

I.      WHEN DEFENDANT FAILED TO ESTABLISH THAT PLAINTIFF
WAS EMPLOYED IN AN EXEMPT, PROFESSIONAL CAPACITY,
THERE ARE NO GENUINE ISSUES OF MATERIAL FACT
PRECLUDING THIS COURT FROM ENTERING SUMMARY
JUDGMENT IN PLAINTIFF'S FAVOR………………………… 7

II.     PLAINTIFF WAS NOT AN EMBRYOLOGIST WITH ADVANCED
KNOWLEDGE IN A FIELD OF SCIENCE WHO EXERCISED
DISCRETION AND INDEPENDENT JUDGMENT AND
THEREFORE WAS NOT EXEMPT FROM THE FLSA'S
OVERTIME REQUIREMENT……………………………………… 8

     A.     RAD Paid Plaintiff on A Salary Basis …………………… 10

     B.     Plaintiff Did Not Work In A Bona Fide Professional
Capacity While At RAD ………………………………….. 10

         (1)     Plaintiff's Work in the Andrology, Endocrine, and IVF
Laboratories Did Not Require Knowledge of an
Advanced Type In A Field of Science And Learning
Customarily Acquired By a Prolonged Course of
Specialized Instruction and Study and Did Not Place
Her In The Professional Employee Category ………….. 11

         (2)     Plaintiff Did Not Consistently Exercise Discretion
and Independent Judgment As An Embryologist In
The IVF Lab at RAD …………………………………… 12

III.    PLAINTIFF HAS ESTABLISHED THAT SHE WAS ENTITLED
TO COMPENSATION AND WAS NOT PAID ACCORDINGLY,
THEREFORE ALLOWING HER CLAIM FOR OVERTIME
COMPENSATION UNDER THE DELAWARE WAGE
PAYMENT AND COLLECTION ACT ………………………….12

CONCLUSION …………………………………………………………………... 14

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) .............................7

Blomgren v. Gibbs and Hill, 7 WH Cases 279, 282 (S.D.N.Y 1947) ...................12

Doherty v. Center For Assisted Reproduction, P.A., 108 F. Supp. 2d 672;
2000 U.S. Dist. LEXIS 17077; 142 Lab. Cas. (CCH) P34, 189
(N.D. Tx 2000).................................................................................. 8

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1
(3d Cir. 1995) ..............................................................................    7

Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S. Ct. 737,
15 L.Ed.2d 694 (1966) .................................................................... 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10,
89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) .............................................    7

Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995) ............................... 7

Reeves v. International Tel. & Tel. Corp., 357 F. Supp. 295, 302-03, 21 WH Cases
40 (W.D. La. 1973) ......................................................................... 8

Reich v. Gateway Press, 13 F.3d 685, 698 n. 15, 1 WH Cases 2d 1313
(3d Cir. 1994)...............................................................................    11

### STATUTES & REGULATIONS

29 C.F.R. §541.3 .........................................................................    10

29 C.F.R. §541.301(b) ...................................................................    11

29 C.F.R. §541.301(d) ...................................................................    11

29 C.F.R. §541.301(e)(2) ................................................................    12

Delaware Wage Payment and Collection Act, 19 Del. C. §1102 ...................    12

Delaware Wage Payment and Collection Act, 19 Del. C. §1103(b) .................    13

Delaware Wage Payment and Collection Act, 19 Del. C. §1113(c)...................    13

Fair Labor Standards Act, 18 U.S.C. §207(a)(1) ......................................    8

Fair Labor Standards Act, 29 U.S.C. §201 et seq. ……………………………….…    1

Fair Labor Standards Act, 29 U.S.C. §213(a)(1) …………………………………..    8

TAB 1 -    Affidavit of Lynn Sansoucie, dated March 14, 2005

## NATURE AND STAGE OF THE PROCEEDING

The Plaintiff in this action, Lynn SanSoucie ("SanSoucie") sued her previous employer Reproductive Associates of Delaware, P.A. ("Defendant") on July 13, 2004, alleging that Defendant failed to compensate her at a rate of one and one-half times her regular rate of pay during her employment for hours worked in excess of 40 per week. Specifically, SanSoucie brings this lawsuit pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §201 et seq., as well as the applicable United States Department of Labor Regulations, including 29 C.F.R. §541.103 et seq., and the Delaware Wage Payment and Collection Act, Chapter 11, Title 19 of the Delaware Code. Simply stated, SanSoucie's cause of action is that she worked, on average, three (3) to five (5) overtime hours per day, or fifteen (15) to twenty-five (25) overtime hours per week, if not more, in excess of 40 hours without any overtime compensation from Defendant whatsoever.

On February 14, 2004, Plaintiff and Defendant filed cross Motions for Summary Judgment. Because there are no material facts in dispute, SanSoucie is entitled to summary judgment as a matter of law. This is the Plaintiff's Reply Brief to Defendant Reproductive Associates of Delaware, P.A.'s Opening Brief in Support of Its Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

I.     WHEN DEFENDANT FAILED TO ESTABLISH THAT PLAINTIFF WAS EMPLOYED IN AN EXEMPT, PROFESSIONAL CAPACITY, THERE ARE NO GENUINE ISSUES OF MATERIAL FACT PRECLUDING THIS COURT FROM ENTERING SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR.

II.    PLAINTIFF WAS NOT AN EMBRYOLOGIST WITH ADVANCED KNOWLEDGE IN A FIELD OF SCIENCE WHO EXERCISED DISCRETION AND INDEPENDENT JUDGMENT AND THEREFORE WAS NOT EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENT.

      A.    RAD Paid Plaintiff on A Salary Basis.

      B.    Plaintiff Did Not Work In A Bona Fide Professional Capacity While At RAD.

            (1)    Plaintiff's Work in the Andrology, Endocrine, and IVF Laboratories Did Not Require Knowledge of an Advanced Type In A Field of Science And Learning Customarily Acquired By a Prolonged Course of Specialized Instruction and Study and Did Not Place Her In The Professional Employee Category.

            (2)    Plaintiff Did Not Consistently Exercise Discretion and Independent Judgment As An Embryologist In The IVF Lab at RAD.

III.   PLAINTIFF HAS ESTABLISHED THAT SHE WAS ENTITLED TO COMPENSATION AND WAS NOT PAID ACCORDINGLY, THEREFORE ALLOWING HER CLAIM FOR OVERTIME COMPENSATION UNDER THE DELAWARE WAGE PAYMENT AND COLLECTION ACT.

## STATEMENT OF MATERIAL FACTS

SanSoucie began part-time employment with Defendant in or around October 2001 and began full-time employment in or around June 2002 continuing through February 4, 2004 (Answer to Complaint #7). She worked in a part-time capacity until the full-time position became available. SanSoucie's job title, while she was a full-time employee was Assistant Lab Manager/Embryologist. SanSoucie's understanding of the full-time position with Defendant was that she would assist Defendant in the Lab and be trained in IVF. (SanSoucie Dep. p. 26).

SanSoucie's educational background consists of the equivalent of an Associate of Science degree in Medical Technology from Hahnemann Medical College in 1975. SanSoucie did not have her Bachelor's Degree prior to her employment with Defendant and did not obtain the degree during or subsequent to her employment with Defendant. She expects to receive her BS in Healthcare Administration in 2006 from the California College of Health Science. Further, SanSoucie was certified as a Medical Lab Technician (MLT), and a Clinical Lab Technician (CLT). She also obtained her clinical lab practitioner certification (CLP) (SanSoucie Deposition p. 7).

SanSoucie's employment background consists of work experience as a senior medical technologist with 26 years experience in hematology, chemistry, radioimmunoassay, urinalysis, microbiology and immunology (D 0002). Her professional experience included employment as a Medical Technician at Metropolitan Central from 1975 through 1988, as a Supervisor in the Oncology Laboratory for Dr. Richard Gordon from 1985 through 1988, and as a Senior Medical Technician at Our Lady of Lourdes Medical Center from 1988 through 1999. She was also employed by Bryn Mawr Hospital from 2000-2001 where she began training in embryology (D

3

0002, 0003, 0012, 0013, 0014). SanSoucie did not hold herself out to be an embryologist when she initially expressed interest in a position with Defendant. She indicated in her cover letter to Defendant that:

> "I am a medical technologist with 24 years experience. I am proficient in andrology, IVF retrievals, RIA, Hepatitis Testing, Immunoassays, Viral Testing, Electrophoresis, Immunology, and Quality Control." (D 0001); (Depo. P. 8)

She never indicated that she had experience as an embryologist nor that she was an embryologist.

When SanSoucie began full-time employment with Defendant; she was advised that the immediate need was for her to learn all aspects of IVF, ICSI, and micromanipulation as it is carried out at Defendant's site. Further, Defendant agreed to provide all necessary training in order to allow SanSoucie to soon join the "best 1%" club of embryologists (D 0032). During SanSoucie's employment with Defendant she was obtaining the training in order to become an embryologist. At the time of her separation of employment with Defendant, SanSoucie believed that she was gaining the skills to work as an embryologist in an IVF Lab (SanSoucie Dep. P. 50-51).

During SanSoucie's employment with Defendant, she simply followed standard operating procedures established by Defendant which did not require discretion or independent judgment (A-1, A-2, A-3). The work SanSoucie performed, which included semen analysis, sperm processing, and endocrine analysis does not require an advanced degree; either a medical assistant or lab technician can perform these tasks (A-2). Further, SanSoucie never assessed when a patient was ready for an egg retrieval or artificial insemination. Only the medical doctors and registered nurses used their discretion and judgment to make those decisions (A-2). The work and tasks SanSoucie performed in the Endocrine Lab and the Andrology Lab were pursuant to standard operating procedures at Defendant's site and did not require the use of discretion or

4

independent judgment on her part (A-2). SanSoucie did, in fact, work closely with Marc Portmann. However, they did not collaborate as members of a team. Marc Portmann always watched and monitored SanSoucie, thereby never allowing her to exercise discretion or independent judgment. For example, SanSoucie never performed a search for eggs alone. The times she was involved in this procedure, Marc Portmann closely monitored and guided her (A-2, A-3). Also, SanSoucie was still learning the ICSI process and as a result she never injected sperm into an egg or performed the ICSI process alone. She was required to always receive guidance from her supervisor (A-3).

With regard to SanSoucie's training, she did attend a week-long training program in June 2001 at the Jones Institute for Reproductive Medicine in Norfolk, Virginia. However, prior to accepting the full-time position with Defendant, SanSoucie requested that she be able to attend this training program and asked that Defendant pay for it, since her previous employer had already made arrangements for her attendance. SanSoucie felt that it was necessary for Defendant to pay for her attendance since she was leaving her previous employer (A-3). SanSoucie never trained under Michael Tucker, Ph.D. She only observed Dr. Tucker and she also visited Dr. Tucker's IVF Center in Shady Grove, Georgia for a one-time on-site observation. During this one-time on-site observation, she did not receive any training (A-3). SanSoucie's contributions to the scientific works presented by Defendant at national conferences was limited to looking up specifics charts and data as requested by Defendant. SanSoucie's involvement did not include any scientific writing, even though her name did appear on the finished product as a courtesy (A-3).

SanSoucie always had to ask Marc Portmann what time she needed to be in the lab each day. She did not have the option of making her own work schedule like professional exempt employees are able to do (A-3).

During SanSoucie's employment with Defendant, she generally worked in excess of 40 hours per week (Complaint ¶ 14). Further, Defendant was aware of these additional hours worked by SanSoucie and the appropriate compensation was not paid to her (Answer to Complaint ¶ 14).

## ARGUMENT

I. **WHEN DEFENDANT FAILED TO ESTABLISH THAT PLAINTIFF WAS EMPLOYED IN AN EXEMPT, PROFESSIONAL CAPACITY, THERE ARE NO GENUINE ISSUES OF MATERIAL FACT PRECLUDING THIS COURT FROM ENTERING SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered" where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute over a material fact must be "genuine", i.e., the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." Id. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995).

To survive a motion for summary judgment, Defendant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The court will "view the underlying facts and all reasonable inferences there from in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Defendant has failed to meet its burden to establish that Plaintiff is an exempt employee under the Fair Labor Standards Act ("FLSA"). Plaintiff has established that, although her job title was that of an Assistant Lab Manager/Embryologist, she was not performing the work of an

embryologist, but rather the duties of a medical lab technician who was unable to make any decisions or exercise independent judgment or discretion without the input and approval of her supervisor.

## II.    PLAINTIFF WAS NOT AN EMBRYOLOGIST WITH ADVANCED KNOWLEDGE IN A FIELD OF SCIENCE WHO EXERCISED DISCRETION AND INDEPENDENT JUDGMENT AND THEREFORE WAS NOT EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENT.

The FLSA requires employers to compensate employees at a rate of one and one-half times their regular rate for any time worked in excess of forty (40) hours per week. 29 U.S.C. §207(a)(1). The FLSA does, however, provide exemptions for employees who are employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. §213(a)(1). Employers have the burden of proof to establish the exemption applies to their employees. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 86 S. Ct. 737, 15 L.Ed.2d 694 (1966). These exemptions must be applied on a case by case basis. See Reeves v. International Tel. & Tel. Corp., 357 F. Supp. 295, 302-03, 21 WH Cases 40 (W.D. La. 1973) (exempt status of employee depends on individual duties, not on how employee is classified). Simply because one employee is classified as an exempt employee does not automatically provide exempt status to all employees in that classification. An employee's job title alone is insufficient to determine exempt or non-exempt status.

The United States District Court for the Northern District of Texas, Fort Worth Division, has opined that an embryologist is an exempt employee under the FLSA. It bears importance to distinguish the factual differences between that case and the case presently before this Court. In Doherty v. Center For Assisted Reproduction, P.A., 108 F. Supp. 2d 672; 2000 U.S. Dist. LEXIS 17077; 142 Lab. Cas. (CCH) P34, 189 (N.D. TX 2000), Doherty was an embryologist who

8

worked for the Defendant for approximately four (4) years. Doherty brought suit against Defendant alleging violations of the FLSA for failure to pay her overtime compensation. The Defendant's position was that Doherty was an employee employed in a bona fide professional capacity exempt from the FLSA's overtime compensation requirement. The Court agreed with the Defendant because Doherty met the requirements of the learned professional exemption. First, the Court found that Doherty received a salary not less than $250 per week. Second, her employment as an embryologist required a Bachelor of Science degree. Third, Doherty's work required the consistent exercise of discretion and independent judgment. Fourth, her work was predominantly intellectual and varied in character, as opposed to being routinely mental, manual, mechanical, or physical.

Although, SanSoucie meets the salary requirement, since she made approximately $62,500 annually (D 0032), and meets the fourth prong of performing work that is predominantly intellectual and varied in character, she is unable to satisfy the requirements of the remaining two prongs. Specifically, SanSoucie does not have a Bachelor of Science degree in Biological Sciences or Medical Technology and she did not consistently exercise discretion and independent judgment. Defendant's own job description for an embryologist indicates that, at a minimum, a Bachelor Degree in Biological Sciences, Medical Technology or equivalent is required. (D 0046). SanSoucie received the equivalent of an AS in Medical Technology from Hahnemann Medical College in 1975 but never obtained a Bachelor's Degree. Finally, although she did exercise some discretion and independent judgment in her work, she was required to obtain final approval from her supervisor in which he overturned her judgment approximately 65% of the time. Defendant employed SanSoucie as a medical technologist who was training to, someday, become an embryologist.

### A.    RAD Paid Plaintiff On A Salary Basis.

There is no dispute that SanSoucie was paid on a salary basis during her full-time employment with Defendant.  Upon commencement of full-time employment with Defendant, she received an annual salary of $62,500.

### B.    Plaintiff Did Not Work In A Bona Fide Professional Capacity While At RAD.

In order to qualify for the learned professional exemption under the FLSA, Defendant must establish that: (1) the employee's primary duty consists of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education…; (2) the employee's work required the consistent exercise of discretion and independent judgment in its performance; and (3) the employee's work  is predominantly intellectual and varied in character.  29 C.F.R. §541.3.

Simply stated, SanSoucie was employed by Defendant as an Assistant Lab Manager/Embryologist during the time period of May 6, 2001 through February 4, 2004. Although her job title was that of an Assistant Lab Manager/Embryologist, she was not performing the work of an embryologist, but rather the duties of a medical lab technician who was unable to make any decisions or exercise significant amounts of independent judgment or discretion without the input and approval of her supervisor.  (SanSoucie Dep.)  SanSoucie was hired with the intention that she would become an embryologist; however, during her employment she was not performing the tasks and duties of a full-fledged embryologist.  Further, she did not have the requisite educational background to be an embryologist.

(1)   **Plaintiff's Work in the Andrology, Endocrine, and IVF Laboratories Did Not Require Knowledge of an Advanced Type In A Field of Science And Learning Customarily Acquired By a Prolonged Course of Specialized Instruction and Study and Did Not Place her in the Professional Employee Category.**

"The phrase 'work requiring advanced knowledge' means work that is predominately intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. §541.301(b).

"The phrase 'field of science or learning' includes the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where, in some instances, the knowledge is of a fairly advanced type, but is not in a field of science or learning." 29 C.F.R. §541.301(c). "The exemption for learned professionals applies to employees in occupations that have specific educational requirements, such as law, medicine, nursing, and the like." Reich v. Gateway Press, 13 F.3d 685, 698 n. 15, 1 WH Cases 2d 1313 (3d Cir. 1994).

"The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. However, the word 'customarily' means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction." 29 C.F.R. §541.301(d). "Where performance of a job is based on ability, skill, and

11

experience attained independently of a formal educational program, the possession of a college degree does not transform the job into one that requires knowledge of an advanced type." 29 C.F.R. §541.301(e)(2), <u>Blomgren v. Gibbs and Hill</u>, 7 WH Cases 279, 282 (S.D.N.Y 1947).

SanSoucie was hired with the intention that she would become an embryologist; however, during her employment, she was not performing the tasks and duties of an embryologist.    Further, she did not have the requisite educational background to be an embryologist.

### (2)    Plaintiff Did Not Consistently Exercise Discretion and Independent Judgment As An Embryologist In The IVF Lab at RAD.

Plaintiff's testimony does establish that she was working in Defendant's IVF Lab. However, it further establishes that she was simply following procedures that had been put in place by Defendant.  She was monitored closely by Marc Portmann, the staff embryologist, and was unable to exercise discretion and independent judgment as other embryologists do.  The one thing that Plaintiff was consistently required to do was to obtain the approval or authority to perform certain tasks in the IVF Lab from her supervisor.

### III.    PLAINTIFF HAS ESTABLISHED THAT SHE WAS ENTITLED TO COMPENSATION AND WAS NOT PAID ACCORDINGLY, THEREFORE ALLOWING HER CLAIM FOR OVERTIME COMPENSATION UNDER THE DELAWARE WAGE PAYMENT AND COLLECTION ACT.

Delaware's Wage Payment and Collection Act, specifically, 19 *Del.C.* §1102, requires the payment of all wages due on the regularly-scheduled payday designated in advance by the employer.  Failure to appropriately compensate employees on the regularly-scheduled paydays entitles the aggrieved employee to liquidated damages in an amount equal to the unpaid

wages/overtime and attorneys' fees, cost of prosecution and costs of the present action. 19 *Del.C.* §§ 1103(b) and 1113(c).

SanSoucie has established, based on the foregoing reasons, that she was an employee of Defendant, that she worked in excess of 40 hours per week with Defendant's knowledge, and that Defendant failed to compensate her at the appropriate rate of pay on her regularly-scheduled payday. Therefore, she has met her burden and is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court to deny Defendant's Motion for Summary Judgment and to grant the Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 facsimile
jmartin@margolisedelstein.com

Dated: March 14, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LYNN SANSOUCIE                          :
                                        :
            Plaintiff,                  :
                                        :       C.A. No. 04-861-JJF
        v.                              :
                                        :       JURY TRIAL DEMANDED
                                        :
REPRODUCTIVE ASSOCIATES                 :
OF DELAWARE, P.A.                       :
                                        :
            Defendant.                  :

## AFFIDAVIT OF LYNN SANSOUCIE

STATE OF _____ _____                :
                                        :       SS.
COUNTY OF _____ .             :

I, Lynn SanSoucie, having been duly sworn, depose and say as follows:

1.  I was employed by Reproductive Associates of Delaware, P.A. ("RAD"). I have personal knowledge of the facts stated below.

2.  I am a certified medical lab technician; not a certified medical technologist.

3.  I am two (2) courses, not two (2) credits, short of completing my Bachelor of Science degree in Healthcare Administration.

4.  The full-time position with RAD that was offered to me was that of an embryologist-in-training.

5.  I did not determine when a patient was ready for an egg retrieval or artificial insemination. I merely followed standard operating procedures established by RAD which did not require discretion or independent judgment on my behalf.

TAB 1

A-1

6. I worked at RAD performing semen analysis, sperm processing, and endocrine analysis. This work does not require an advanced degree; moreover, a medical assistant or lab technician can perform these tasks.

7. I never mentioned or raised the issue of overtime compensation because of my fear of retaliatory treatment from Marc Portmann.

8. I believe the work at RAD required more than one embryologist because Marc Portmann made things more difficult than they needed to be. I did not have any experience in this area and did not know any better at the time.

9. I never assessed when a patient was ready for an egg retrieval or artificial insemination; instead, the medical doctors and registered nurses used their discretion and judgment to make those decisions.

10. Phlebotomy does not require an advanced degree or specialized training.

11. The work and tasks I performed in the Endocrine Lab were pursuant to standard operating procedures at RAD and did not require the use of discretion or independent judgment on my part.

12. Results from tests performed were generated by a computer program.

13. The work and tasks I performed in the Andrology Lab were pursuant to standard operating procedures at RAD and did not require the use of discretion or independent judgment on my part.

14. I did work closely with Marc Portmann. This was because Marc always watched and monitored me, thereby never allowing me to exercise discretion or independent judgment.

15.  I never performed a search for eggs alone.  The times I was involved in this procedure, Marc Portmann closely monitored and guided me.

16.  I was still learning the ICSI process and, as a result, I never injected sperm into an egg without guidance from my supervisor.

17.  I never performed the ICSI process alone.  I always received guidance from my supervisor.

18.  In order to determine what embryos were properly developing, I followed a standard operating procedure and did not use discretion or independent judgment.

19.  I attended a week-long training seminar in June 2001 at the Jones Institute for Reproductive Medicine in Norfolk, VA.  My attendance at this training was a prerequisite to acceptance of the full-time position at RAD because my previous employer had already paid for my attendance.  I felt that it was necessary for RAD to pay for my attendance since I was leaving my previous employer.

20.  I never trained under Michael Tucker, Ph.D.  I only observed Dr. Tucker on one occasion.

21.  I visited Dr. Tucker's IVF Center in Shady Grove, Georgia for a one-time on-site observation.  I did not receive any training.

22.  My contribution to the scientific works presented by RAD at national conferences was limited to looking up specific charts and data as requested by Defendant.  My involvement did not include any scientific writing, even though my name did appear on the finished product as a courtesy.

23.  I always had to ask Marc Portmann what time I needed to be in the lab each day.  I did not have the option of making my own work hours or schedule.

A-3

24. I was not involved in the interview process of Dawn Printz or Linda Morrison. Marc Portmann interviewed both potential candidates who are currently employed by RAD.

25. I was advised in February 2004 that I was going to be fired. However, I had already made the decision to terminate my employment relationship with RAD.

26. My resume was never submitted to my current employer. Therefore, it was not used in the decision to offer me my current position.

27. My current position is similar to the work I was performing at RAD and I currently receive overtime compensation for hours worked in excess of 40 hours per week.

LYNN SANSOUCIE

SWORN TO AND SUBSCRIBED before me, a Notary Public, for the State and County aforesaid, this ____14____ day of March, 2005.

NOTARY PUBLIC

JACQUELINE GARRETT
Notary Public
State of New Jersey
My Appointment Expires 06/08/2009



A-4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LYNN SANSOUCIE,                          :
                                         :
              Plaintiff,                 :          C.A. No.  04-861(JJF)
                                         :
                    v.                   :          JURY TRIAL DEMANDED
                                         :
REPRODUCTIVE ASSOCIATES                  :
OF DELAWARE, P.A.,                       :
                                         :
              Defendant.                 :

## CERTIFICATE OF SERVICE

I, Jeffrey K. Martin, do hereby certify that on March 14, 2005, I electronically

filed *Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment* with

the Clerk of the Court using CM/ECF which will send notification of such filing, and

have also sent two (2) true and correct copies of same via first class U.S. Mail, postage

prepaid to the following attorney-of-record below:

David H. Williams
Morris, James, Hitchens & Williams, LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899-2306

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Margolis Edelstein
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680
(302) 777-4682 facsimile
jmartin@margolisedelstein.com

Dated:  March 14, 2005