IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LYNN SANSOUCIE, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-861-JJF |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| REPRODUCTIVE ASSOCIATES | ) | |
| OF DELAWARE, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT REPRODUCTIVE ASSOCIATES OF DELAWARE, P.A.'S
REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

David H. Williams (#616)
Jennifer L. Brierley (#4075)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6900/6848
dwilliams@morrisjames.com
Attorneys for Defendant
    Reproductive Associates of Delaware, P.A.

Dated: March 28, 2005

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

SUMMARY OF ARGUMENT ......................................................................................... 4

ARGUMENT ........................................................................................................................ 5

      IN A LAST DITCH EFFORT TO AVOID SUMMARY JUDGMENT, PLAINTIFF PROVIDES CONCLUSORY ARGUMENTS, AND ATTEMPTS TO RECHARACTERIZE HER DEPOSITION TESTIMONY AND RETREAT FROM THE REPRESENTATIONS SHE MADE TO PROSPECTIVE EMPLOYERS ............................................................................ 5

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Doherty v. Center for Assisted Reproduction, P.A.*,
   108 F.Supp.2d 672 (N.D. Texas 2000)
   *aff'd by* 264 F.3d 1140 (5th Cir. 2001) .................................................................5

## NATURE AND STAGE OF PROCEEDINGS

On July 14, 2004, Lynn Sansoucie ("Plaintiff") filed a two-count Complaint against Defendant Reproductive Associates of Delaware, P.A. ("RAD") alleging claims for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and the Delaware Wage Payment and Collection Act. 19 *Del. C.* § 1101, *et seq.* Plaintiff claims she is entitled to overtime compensation for hours she worked in excess of forty hours a week during her employment with RAD. Plaintiff also seeks attorney's fees and costs, as well as liquidated damages.

On February 14, 2005, RAD and Plaintiff filed cross motions for summary judgment on both of Plaintiff's claims.

RAD seeks summary judgment on the basis Plaintiff is exempt from the FLSA's overtime compensation requirement because she was employed by RAD in a bona fide professional capacity pursuant to 29 C.F.R. § 213(a)(1).[1] RAD also contends Plaintiff's claim under the Delaware Wage Payment and Collection Act is barred by the one year statute of limitations, and Plaintiff is not entitled to overtime compensation because she was employed in a bona fide professional capacity.

Plaintiff seeks summary judgment on the basis Plaintiff is not exempt from the FLSA's overtime compensation requirement. Relying on conclusory statements throughout her Opening Brief, Plaintiff makes an obvious attempt to downplay her role at RAD to establish an entitlement to overtime compensation. Plaintiff falls short of

---

[1] On April 20, 2004, the U.S. Department of Labor released new regulations redefining some of the exemptions for professional employees. Plaintiff's suit was initiated on July 14, 2004, but the revised regulations did not take effect until August 23, 2004. Any references to the FLSA's regulations in this Reply Brief refer to the regulations in effect when Plaintiff filed her suit.

1

2

establishing the absence of a genuine issue of material fact in her favor. For all the reasons stated in RAD's Opening Brief in Support of its Motion for Summary Judgment, it is RAD, and not Plaintiff, who is entitled to an award of summary judgment.

This is RAD's Reply Brief in Support of RAD's Motion for Summary Judgment.

## STATEMENT OF FACTS

RAD incorporates by reference the detailed statement of facts contained in its Opening Brief filed on February 14, 2005 in support of its Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

I. IN A LAST DITCH EFFORT TO AVOID SUMMARY JUDGMENT, PLAINTIFF PROVIDES CONCLUSORY ARGUMENTS, AND ATTEMPTS TO RECHARACTERIZE HER DEPOSITION TESTIMONY AND RETREAT FROM THE REPRESENTATIONS SHE MADE TO PROSPECTIVE EMPLOYERS.

## ARGUMENT

I.  **IN A LAST DITCH EFFORT TO AVOID SUMMARY JUDGMENT, PLAINTIFF PROVIDES CONCLUSORY ARGUMENTS, AND ATTEMPTS TO RECHARACTERIZE HER DEPOSITION TESTIMONY AND RETREAT FROM THE REPRESENTATIONS SHE MADE TO PROSPECTIVE EMPLOYERS.**

If there is any issue of fact in this case, it exists among Plaintiff's deposition testimony, her Answering Brief, and the Affidavit she attaches to her Answering Brief. In an obvious effort to side step RAD's Motion for Summary Judgment, Plaintiff provided an Affidavit to the Court contradicting her deposition testimony and the representations she made to prospective employers. For purposes of this Reply Brief, RAD will not restate the many arguments it has already made supporting the fact RAD is entitled to summary judgment.[2] Instead, RAD will point out the conclusory nature of Plaintiff's factual allegations, and the multiple contradictory statements she makes in her Answering Brief, her Affidavit, her deposition testimony, and the representations she made to prospective employers when she left RAD.

A.  **Plaintiff's Conclusory Argument She Did Not Work As An Embryologist At RAD.** It is important to recognize Plaintiff does not argue an embryologist <u>is</u> entitled to overtime compensation under the FLSA. Nor does Plaintiff argue an embryologist is a non-exempt employee under the FLSA. Plaintiff even points to *Doherty v. Center for Assisted Reproduction* for the ruling an embryologist is a bona fide professional employee under the FLSA. See, *Doherty,* 108 F. Supp.2d 672 (N.D. Texas 2000) *aff'd by,* 264 F.3d 1140 (5th Cir. 2001). Plaintiff also admits she held the job title of an embryologist at RAD. (Plaintiff's Ans. Brief, pp. 7-8, 10). To avoid the

---

[2] RAD's arguments are made in its Opening Brief in Support of RAD's Motion for Summary Judgment, as well as RAD's Answering Brief in Opposition to Sansoucie's Motion for Summary Judgment.

5

professional employee exemption, Plaintiff's strategy is to claim she did not really perform the work of an embryologist at RAD. [Plaintiff's Ans. Brief, pp. 7-8, 10]. On multiple levels, however, Plaintiff's argument collides with her own deposition testimony, and the representations she made to prospective employers when she left RAD:

(1)     First, in her deposition testimony, Plaintiff admitted performing all of the tasks of an embryologist, including analyzing semen (A-22; A-61)[3], performing endocrine assays (A-62-66), grading embryos (A-53-54), assessing the maturity of eggs (A-47-48), injecting sperm into patient eggs (A-51), assessing whether fertilization occurred (A-49), assessing when to process embryos for thawing (A-54; A-58), and communicating information to RAD's patients. (A-58-59). In her Answering Brief, Plaintiff provides no specific evidence to refute these uncontroverted facts. Instead, she simply tries to defeat summary judgment by arguing in a conclusory manner she did not really perform the tasks of an embryologist at RAD.

(2)     Second, in her deposition testimony, Plaintiff admitted describing herself as embryologist and holding herself out as an embryologist when she was seeking employment after she left RAD. (A-71-72). On her resume, Plaintiff made clear to potential employers she was fully trained and qualified in virtually all aspects of working in an IVF lab with training, experience, and skill to perform:

> "...all aspects of the [Assisted Reproductive Technology] Department. All Andrology testing, IVF-ET, embryo freezing, Micromanipulation of Gametes, including assisted hatching, Intra-Cytoplasmic sperm injection, Laser Hatching, and operation of Tosoh instrument." (Emphasis added.) (A-71-72; A-135).

---

[3] ("A-__") refers to RAD's Appendix filed in support of its Motion for Summary Judgment, and the applicable page number.

6

To side step RAD's Motion for Summary Judgment, Plaintiff attempts to retreat from the representations she made to prospective employers, and the deposition testimony she provided.

(3) Third, Plaintiff contends she never really submitted her resume to her current employer, and it was not used in the decision to offer her an embryologist position. (Affidavit of L. Sansoucie, ¶ 26). Plaintiff overlooks the fact it is not relevant whether Plaintiff's current employer saw her resume or not. It is relevant that Plaintiff casts the facts in one light when she wanted to gain employment as an embryologist, but she casts them differently here to secure overtime compensation.

(4) Fourth, while Plaintiff contends she did not really perform the tasks of an embryologist at RAD, she testified in her deposition she was "a good embryologist" when she left RAD, and she in fact secured a full time position as an embryologist as soon as she left RAD. (A-34; A-72). Plaintiff even testified she had to spend her time in the IVF Lab during peak periods because two embryologists were needed. (A-36). Plaintiff's argument she did not work as an embryologist at RAD is not reasonable, nor is it supported by specific evidence. In addition, Plaintiff does not overcome the problem that her own deposition testimony, and the representations she made to prospective employers show she did work as an embryologist at RAD. Indeed, the record conclusively establishes she was employed as an embryologist at RAD, and worked as an embryologist at RAD.

**B.     Plaintiff's Claim She Was Never Trained By Michael Tucker, Ph. D. When She Worked At RAD.**   Michael Tucker, Ph.D., is one of the most widely respected and recognized embryologists in the field. (A-33). To downplay her role and

experience at RAD, Plaintiff contends she did not receive any training from Dr. Tucker. Plaintiff attached an Affidavit to her Answering Brief claiming "I never trained under Michael Tucker, Ph.D. I only observed Dr. Tucker on one occasion. I did not receive any training". (Affidavit of L. Sansoucie, ¶ 20). The problem Plaintiff faces is her deposition testimony states otherwise, as well the representations she made to potential employers:

(1) In her deposition, Plaintiff explained Dr. Tucker is one of the most widely respected and recognizable embryologists in the field. (A-33). Plaintiff testified when she was employed as an embryologist at RAD "...I trained under Dr. Tucker. He came up to our lab quite often, and if I had a question for him, he would sit down and show me or answer me." (A-33). Plaintiff's deposition testimony is, on its face, inconsistent with her Affidavit, and reflects Plaintiff's obvious effort to mischaracterize the facts and minimize her role at RAD as an embryologist.

(2) In her deposition, Plaintiff also explained she drafted her own resume, posted it on the internet, and included Dr. Tucker's name on it "because it was someone I had been trained by." (A-33). On her resume, Plaintiff elaborated on her professional training under Dr. Tucker to include not just a one-time occasion, but training on the " <u>daily</u> operation and procedures in the IVF lab including retrievals, ICSI, Embryo Freeze, transfers, Assisting Hatching, Endocrinology testing". [emphasis added]. (A-136). On her resume, Plaintiff even listed Dr. Tucker as one of RAD's directors and made no mention of the training she received by others at RAD. (A-135).

C. **Plaintiff's Claim She Is Not A Medical Technologist.** Now recognizing the FLSA regulations consider a certified medical technologist a professional

8

employee, Plaintiff attempts to retreat from her prior representations she is an experienced medical technologist. In her Affidavit, Plaintiff contends she is not a "certified medical technologist", but only "a medical lab technician". (Affidavit of L. Sansoucie, ¶ 2). The fatal flaw with Plaintiff's argument is she represented the complete opposite when she was hired by RAD:

  (1) In a cover letter she sent to RAD seeking employment, Plaintiff explained "I am a *medical technologist* with 24 years experience". [emphasis added.] (A-106). On the resume she sent to RAD in 2000, she also described herself in the very first sentence as a "*Senior Medical Technologist* with 26 years experience". (A-107). Plaintiff then produced a copy of her certification from the "United Clinical Laboratory Practitioners" stating she was a medical technologist. (A-9-10, A-14; A-137).

  (2) During her deposition, Plaintiff also testified she worked as a medical technologist long before she ever starting working at RAD. (A-16). Plaintiff admitted when she applied to RAD for employment, she considered herself a medical technologist, and accurately described herself as a medical technologist on her resume. (A-6; A-14). Now that the facts are inconvenient to Plaintiff, she tries to recast them in her favor. Given the record in this case, a reasonable jury would have to conclude Plaintiff is, and was a medical technologist long before she joined RAD.

  **D. Plaintiff's Claim She Never Represented to RAD She Had Prior Experience In IVF Procedures.** To support her argument that she never really worked at RAD as an embryologist, Plaintiff now claims she informed RAD she had no prior experience in IVF procedures. (Plaintiff's Ans. Br., p. 4). Again, Plaintiff provides no specific evidence to support her conclusory argument. More importantly, the record

9

supports the opposite conclusion. Not only did Plaintiff describe the depth of her prior work experience in *in-vitro* fertilization at Brywn Mawr's IVF Center, but Plaintiff also informed RAD she was *proficient* in IVF retrievals. [emphasis added.] (A-22-23; A-106). In fact, the only IVF procedure Plaintiff reported she had not previously been trained in was the specialized ICSI procedure. (A-22-23).

    **E. Plaintiff's Conclusory Argument She Was Only Following Lab Rules and Protocols Dictated by RAD.** To support her contention she did not exercise any independent judgment and discretion at RAD, Plaintiff now claims she was "simply following procedures that had been put in place by [RAD]". (Plaintiff's Ans. Brief, p. 12). To avoid summary judgment, Plaintiff argues her work at RAD required her to do no more than follow lab protocols dictated by RAD. The fact of the matter is Plaintiff provides no citation or explanation of any lab protocols, rules, or procedures she allegedly had to follow. Plaintiff falls drastically short of creating an issue of material fact, and her allegations rest on conclusory and generalized statements alone. In addition, her contention that her work was governed exclusively by lab protocols conflicts with her own deposition testimony:

    (1) In her deposition, Plaintiff confirmed the work of an embryologist encompasses many things, including semen analysis, sperm preparation, micromanipulation of gametes, identification of oocytes, and freezing eggs and embryos. (A-79-80; A-139-140). When Plaintiff testified she performed all of these duties at RAD, she did not testify she was only following lab protocols. (A-21-22; A-35-36; A-42-55; A-58-60; A-61-65; A-67). Instead, Plaintiff testified her work required the exercise of independent thinking when diluting sperm samples (A-67); when assessing

how long to spin a sperm sample (A-69); when assessing the difference between a normally fertilized egg and an abnormal one (A-48-49); when grading embryos (A-54); and when processing embryos for freezing. (A-58).

**F. Plaintiff's Generalized Argument All Her Work Required The Approval of Her Supervisor.** To avoid the professional employee exemption, Plaintiff claims her supervisor, Marc Portmann ("Portmann"), "always" watched and monitored her and required her to seek approval for her work. (Affidavit of L. Sansoucie, ¶ 14). Consistent with Plaintiff's approach throughout her entire Answering Brief, Plaintiff provides no specific evidence or citation to the record to support any of her representations. Plaintiff even claims that Portmann overturned her judgment "65% of the time" (Plaintiff's Ans. Br., p. 9), but nowhere in the record is such a statement found.[4] To avoid summary judgment, Plaintiff relies on unsupported and conclusory allegations to advance the theory Portmann had to approve all of her work. Plaintiff cannot provide specific evidence to support her contention because it cannot be true:

(1) In her deposition, Plaintiff admitted Portmann was not always in the lab with her all the time. (A-35-36). Plaintiff admitted she performed semen analysis, phlebotomy, endocrine assays, semen freezing, and sperm preparation independently of Portmann. (A-35-36). Portmann could not have "always watched" and "monitored" Plaintiff because Plaintiff even admits both she <u>and</u> Portmann were needed to work in the IVF Lab together during peak periods. (A-36)..

(2) In her Answering Brief, Plaintiff contends she did not collaborate with Portmann at all when she worked at RAD. (Plaintiff's Ans. Br., p. 5) In her

---

[4] Even when Plaintiff attempts to provide a citation to the record, Plaintiff only cites to her deposition generally. It appears Plaintiff expects the Court and RAD's counsel to search the entire deposition transcript for the testimony.

11

deposition, Plaintiff testified to the complete opposite. Plaintiff admitted she collaborated with Portmann "as two embryologists working together" about the particular judgments made in the IVF Lab. (A-55).

In all events, Plaintiff falls short of creating an issue of material fact. Any attempt to do so on Plaintiff's behalf has resulted in numerous inconsistencies among her deposition testimony, her Affidavit, and her Answering Brief. The conclusion is inescapable that RAD is entitled to summary judgment as a matter of law.

## CONCLUSION

For all the foregoing reasons, RAD respectfully requests this Court grant its Motion for Summary Judgment and enter judgment in RAD's favor and against Plaintiff on all counts of her Complaint.

Respectfully submitted,

*/s/ Jennifer J. Brierley for*
David H. Williams (#616)
Jennifer L. Brierley (#4075)
MORRIS, JAMES, HITCHENS & WILLIAMS
222 Delaware Avenue
Wilmington, DE 19899
(302) 888-6900/6848
dwilliams@morrisjames.com
Attorneys for Defendant, Reproductive
Associates of Delaware, P.A.

Dated: March 28, 2005

## CERTIFICATE OF SERVICE

I, JENNIFER L. BRIERLEY, hereby certify that on this 28th day of March, 2005, two copies of the within **DEFENDANT REPRODUCTIVE ASSOCIATES OF DELAWARE, P.A.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** were served by United States Mail, postage prepaid, on the following attorney of record at the address indicated below:

>Jeffrey K. Martin, Esquire
>Margolis & Edelstein
>1509 Gilpin Avenue
>Wilmington, DE 19806

*/s/ Jennifer L. Brierley*
Jennifer L. Brierley