IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LYNN SANSOUCIE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 04-861 JJF |
| | : |
| REPRODUCTIVE ASSOCIATES OF | : |
| DELAWARE, P.A., | : |
| | : |
| Defendant. | : |

Jeffrey K. Martin, Esquire, MARGOLIS EDELSTEIN, Wilmington, Delaware.
Attorney for Plaintiff.

David H. Williams, Esquire, and Jennifer L. Brierley, Esquire, MORRIS, JAMES, HITCHENS & WILLIAMS LLP, Wilmington, Delaware.
Attorneys for Defendant.

**O P I N I O N**

May 4, 2005
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are the parties' cross-motions for summary judgment. For the reasons discussed, Defendant's Motion For Summary Judgment (D.I. 25) will be granted and Plaintiff's Motion For Summary Judgment (D.I. 23) will be denied.

## I. Background

On July 13, 2004, Plaintiff Lynn SanSoucie sued her previous employer, Defendant Reproductive Associates of Delaware, a fertility treatment clinic. Plaintiff's two-count Complaint alleges that Defendant failed to compensate her at a time-and-a-half rate for her overtime work in violation of (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq, and (2) the Delaware Wage Payment and Collection Act. 19 Del. C. § 1101, et seq. Plaintiff also seeks attorneys' fees and costs, as well as liquidated damages. The parties have filed cross motions for summary judgment.

## II. Standard of Review

In relevant part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact,

a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

To defeat a motion for summary judgment, the non-moving party must:

> do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). However, the mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving on that issue. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

### III. Parties' Contentions

In support of her motion for summary judgment, Plaintiff contends that Defendant failed to compensate her at a time-and-a-half rate for her overtime work in violation of the FLSA. Plaintiff contends that she has established the prima facie elements for a wage case. Plaintiff's FLSA claim forms the basis for her Delaware Wage Payment and Collection Act claim.

In contrast, Defendant contends that it was exempted from the time-and-a-half requirement of the FLSA because Plaintiff, as an embryologist, was employed in a bona fide professional capacity. Further, Defendant contends that, because Plaintiff was not entitled to overtime compensation, Plaintiff has received all the wages she is due and thus has no claim under the Delaware Wage Payment and Collection Act. Defendant further contends that Plaintiff's Delaware claim is barred in part by the applicable one-year statute of limitations. 10 Del. C. § 8111.

In response, Plaintiff contends that she was not an embryologist and that her job duties did not rise to those of a bona fide professional.

3

**IV.   Discussion**

The Fair Labor Standard Act generally requires that an employee receive time-and-a-half compensation for the time he or she works in excess of a forty hour workweek. 29 U.S.C. § 207(a)(1). Section 213 of the Act, however, provides an exemption for "any employee employed in a bona fide ... professional capacity ...." In relevant part, the U.S. Department of Labor's regulations define such an employee as one "(1) Compensated on a salary or fee basis at a rate of not less than $455 per week ... and (2) Whose primary duty is the performance of work: (i) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction ...." 29 C.F.R. § 541.300.

    1.   Compensation

Plaintiff concedes that she meets the first requirement of the bona fide professional exemption; she made approximately $62,500 annually (D.I. 29 at 9) while working for Defendant.

    2.   Learned professional

The parties, however, dispute whether Plaintiff was employed as a "learned professional" pursuant to the bona fide professional exemption of 29 U.S.C. § 213 and its corresponding regulations. Section 541.301 of the regulations identifies three elements for the "learned professional" exemption:

4

> (1) The employee must perform work requiring advanced knowledge;
> (2) The advanced knowledge must be in a field of science or learning; and
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

An employer has the burden of establishing that the exemption applies to its employee, Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190 (1966), and such exemptions are narrowly construed against the employer. Mitchell v. Kentucky Finance Co., 359 U.S. 290 (1959).

The Court concludes that Defendant has met this burden and has established all three elements of the learned professional exemption. Concerning the first and second elements, the Court concludes that Plaintiff's work required advanced knowledge in science and learning. As she represented, Plaintiff's job title was "Assistant Lab Manager/ Embryologist." (D.I. 29 at 10.) Her work included semen analysis, sperm processing, and endocrine analysis in Defendant's Andrology and Endocrine Labs, as well as egg processing in the Defendant's IVF Lab.

Further, regarding the third element of the learned professional exemption, the Court concludes that Plaintiff applied in her job an advanced knowledge that is customarily acquired by a prolonged course of specialized intellectual instruction. The Court finds that Plaintiff obtained her job after several years of schooling, numerous certifications, and several related work experiences. Plaintiff obtained an

5

Associates of Science degree in Medical Technology from Hahnemann Medical College (nearly 60 credits of course work), and also took additional courses in medical technology at Rowan College. Currently, Plaintiff is two courses shy of obtaining a Bachelor of Science at the California College of Health Science. At the time she was hired by Defendant, Plaintiff was also certified as a Medical Lab Technician, Clinical Lab Technician, and clinical lab practitioner. (D.I. 24 at 3.) Further, Plaintiff had 26 years of work experience as a senior medical technologist in the areas of hematology, chemistry, radioimmunoassay, urinalysis, microbiology and immunology. (D.I. 24 at 3.)

The Court further finds that Plaintiff's work as an embryologist required a particularly advanced knowledge. On this issue, the Court is persuaded by the decision of the Northern District of Texas, which held that an embryologist was a learned professional. Doherty v. Center for Assisted Reproduction, 108 F. Supp. 2d 672, (N.D. Tex. 2000) aff'd by, 264 F.3d 1140 (5th Cir. 2001). While the facts in Doherty were not identical, the court in Doherty emphasized the education, certifications, and competency required of persons working in such a high stakes field of science. In Doherty, the embryologist's duties included,

> in-vitro fertilization process, including evaluating the eggs and determining which eggs, among many possible eggs, were suitable for fertilization; evaluating and selecting the specific egg to be injected with sperm; evaluating and

6

>selecting the sperm for injection, and actually injecting the sperm into the egg using sophisticated microscopic tools; analyzing the eggs to evaluate and determine whether they had been properly fertilized and to assess the likelihood of proper development; assessing whether the embryo was developing properly; evaluating and deciding which embryo was to be transferred to the patient based on her assessment of which embryo had the best chance of success; and interacting directly with the patients regarding the status of the case.

Id. at 676-77.

Here, Plaintiff was at least an embryologist-in-training. Plaintiff performed many of the tasks of an embryologist, including analyzing semen, performing endocrine assays, grading embryos, assessing the maturity of eggs, injecting sperm into eggs, determining whether fertilization occurred, determining when to thaw embryos, and communicating with patients. (D.I. 27 at 47-61.) Further, after separating from Defendant, Plaintiff represented herself as an embryologist to potential employers (D.I. 27 at 71-72; 135). Her resume stated as follows:

> Specific training includes all aspects of the ART Department. All Andrology testing, IVF-ET, embryo freezing, Micromanipulation of Gametes, including assisted hatching, Intra-Cytoplasmic sperm injection, Laser Hatching, and operation of Tosoh instrument [i.e., endocrine testing]....

(Id.) Plaintiff agreed in her deposition testimony that she was "a good embryologist" when she left Defendant (D.I. 27 at 34). She further testified that she belonged to at least one professional society for embryologists. (Id. at 72.) Further, shortly after leaving Defendant, Plaintiff obtained a full-time position as an embryologist. (Id.)

7

In response to the record evidence that indicates that Plaintiff worked as an embryologist, Plaintiff denies she was an embryologist. But Plaintiff has failed to produce sufficient evidence to support her contention. Because of Plaintiff's lack of proof, the Court concludes that a genuine issue of material fact does not exist. Thus, the Court concludes that Defendant has met its burden of establishing that Plaintiff's primary duties fell within the learned professional exemption. Because the Court has determined that Plaintiff is not entitled to overtime pay pursuant to the FLSA, the Court concludes that Plaintiff's Delaware Wage Payment and Collection Act claim is moot. For these reasons, the Court will grant Defendant's Motion For Summary Judgment (D.I. 25) and deny Plaintiff's Motion For Summary Judgment (D.I. 23).

An appropriate Order will be entered.